UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN DAVID KANE,

      Petitioner,                                Civil Action No. 19-cv-12262

v.                                        HONORABLE MARK A. GOLDSMITH

NOAH NAGY,

      Respondent.

_____/

**OPINION & ORDER**
**GRANTING AN EVIDENTIARY HEARING ON PETITIONER'S TRIAL COUNSEL**
**CLAIM AND HIS RELATED INEFFECTIVE ASSISTANCE OF APPELLATE**
**COUNSEL CLAIM**

Petitioner Brian David Kane filed an application for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, through his attorney Mary A. Owens (Dkt. 1). Petitioner challenges his conviction for possession of at least 450 grams but less than 1,000 grams of oxycodone, Mich. Comp. Laws § 333.7401(2)(a)(ii); possession of at least 50 but less than 450 grams of morphine, Mich. Comp. Laws § 333.7401(2)(a)(iii); possession of at least 50 but less than 450 grams of methadone, Mich. Comp. Laws § 333.7401(2)(a)(iii); possession of less than 50 grams of hydromorphone, Mich. Comp. Laws § 333.7401(2)(a)(iv); and breaking and entering a store with intent to commit a larceny, Mich. Comp. Laws § 750.110(1). See Pet. Br. at PageID.22 (Dkt. 1-1); Michigan v. Kane, No. 318237, 2015 WL 1542160, at *1 (Apr. 7, 2015 Mich. Ct. App.).

As part of his habeas petition, Petitioner alleges he was denied the effective assistance of trial counsel because trial counsel (i) failed to consult with and/or present the testimony of an expert witness, specifically, an expert in pharmacy accountability, who would have been able to testify that the prosecution's calculations of the amounts of controlled substances stolen from the

pharmacy was significantly in error; (ii) failed to consult with and/or present the testimony of an expert in the methodology of accounting for controlled substances; (iii) failed to conduct a competent cross-examination of the prosecution's expert witnesses to show that the prosecution's calculations of "weights" were unreliable and that their "bottom line" methodology was an unreliable method to account for the stolen controlled substances, as a result of his failure to consult with an expert; and (iv) failed to call experts to rebut the testimony of the prosecution's witnesses concerning their calculation of the amount of controlled substances that were stolen, (v) failed request appointment of an expert at public expense.  See Pet. Br. at PageID.45-46.[1]  He also argues that appellate counsel was ineffective in failing to raise these challenges in Petitioner's appeal of right and failing to obtain an expert during the appeal.  Id. at PageID.74-77.  For the reasons that follow, the Court orders an evidentiary hearing on Petitioner's expert-related ineffective assistance of counsel claims.

## I. BACKGROUND

Petitioner was convicted after a jury trial in the Jackson County Circuit Court.  See Kane, 2015 WL 1542160, at *1.  The appellate court summarized the background and some of the trial history as follows:

> This case arose when a pharmacy was broken into after business hours in September 2010.  The prosecuting attorney's theory of the case was that defendant unsuccessfully tried to pry the door open, then broke a window to gain entry, pried open the cabinet that housed the narcotics, and took many bottles of pills from it. Defense counsel conceded that defendant broke into the pharmacy intending to commit a larceny, but suggested that the prosecution would not be able to prove that defendant knowingly took pills of the kinds, or in the quantities, charged.  The subject pharmacy's supervisor of operations testified that the kind and quantities of drugs missing after the break-in were determined by comparing what was left in the

---

[1] In Petitioner's organizational scheme, these are claims B(1)-(6); the Court categories them into five claims because his claims B(4) and B(5) are difficult to distinguish from one another.

narcotics cabinet after the break-in with inventory records indicating what was there
before it.

Id.

DNA evidence discovered at the pharmacy by investigators established Petitioner's
identity as the person who broke into the pharmacy. Id. at *8. No controlled substances were ever
found, either in Petitioner's possession, or anywhere else. Id. at *4.

At trial, the prosecution presented three pharmacists employed at Allegiance Health, where
the larceny occurred: Richard Fifelski, who worked at the pharmacy the day before the break-in,
Trial Tr. Vol. II at PageID.816 (Dkt. 6-4); Dr. Scott Gindlesberger, site coordinator for the
pharmacy, id. at PageID.907; and Dr. Thomas Crampton, director of the pharmacy operations for
Allegiance Health in Jackson, Michigan, Trial Tr. Vol. III at PageID.963 (Dkt. 6-5). Gindlesberger
and Crampton were also qualified as expert witnesses. See Trial Tr. Vol. II at PageID.909
(Gindlesberger); Trial Tr. Vol. III at PageID.964 (Crampton). After the break-in was discovered
just before midnight on September 3, 2010, Allegiance security called Crampton. Trial Tr. Vol.
III at PageID.965. The police asked Crampton to provide a summary of the medications that were
taken, and he assigned Gindlesberger with the task of compiling an inventory of what controlled
substances were stolen and in what amounts. Id. at PageID.967.

The principal prosecution proofs, in addition to witness testimony, were People's Exhibits
36 (Dkt. 1-9) and 37 (Dkt. 1-10). Exhibit 36 constituted a list of the medications allegedly taken
in the break-in. Gindlesberger compiled the list. Exhibit 37, prepared by Gindlesberger at the
request of the prosecution, constituted his calculations of the "weights" of the missing drugs. The
defense introduced Exhibit Q (Dkt. 1-11), which was the bi-annual inventory report prepared to
comply with federal drug enforcement requirements.

According to Petitioner, trial counsel did not seek disclosure of the prosecution's expert witnesses under Michigan Rule of Evidence 702, nor did he subpoena the relevant pharmacy documents until several days before trial.  Trial counsel did not actually obtain the pharmacy evidence until after trial had begun.  The documents obtained by defense counsel were only the C-2 logs—perpetual inventories of the controlled substances on hand, not the "primary records."[2]

Defense counsel actually stated on the record that he was unprepared to cross-examine the prosecution's two expert witnesses, pharmacists Gindelsberger and Crampton.  Trial Tr. Vol. III at PageID.958 (Dkt. 6-5).  Petitioner alleges that defense counsel's cross-examination of Gindelsberger and Crampton was ineffective because he did not obtain the pharmacy documents sufficiently in advance of trial, nor did counsel consult with any expert who could assist counsel in understanding or challenging the prosecution's case or the testimony provided by expert/fact witnesses Gindlesberger and Crampton.  Counsel's defense was that the C-2 perpetual inventories of the controlled substances on hand contained significant errors, and, therefore, the "weights" of the drugs shown on Exhibit 37 were inaccurate.  Petitioner alleges that trial counsel was ineffective for failing to receive and review the actual pharmacy records until after trial had begun, and for failing to consult or retain an expert to challenge the prosecution's methodologies of establishing the weights the stolen drugs.  As discussed below in the context of the prejudice of this alleged error on Petitioner, inaccuracies in the weights might have resulted in a conviction carrying a maximum 60-year sentence, rather than a conviction carrying a maximum 40-year sentence.

---

[2] These reports are known as the "C-2" logs, because they are the logs for Schedule 2 controlled substances.  The distinction is discussed below in the context of later-retained expert John Mudri's opinion.

Petitioner argues that these deficiencies prevented counsel from being able to show the inaccuracies in the prosecution's calculations of the weight of the controlled substances and from being able to effectively cross-examine the prosecution's chief witnesses.   See Pet. Br. at PageID.25-26.  Petitioner further argues that trial counsel was ineffective for failing to obtain an expert for the defense, who could have rebutted the testimony of the prosecution's expert witnesses.  Id. at PageID.26.  Petitioner alleges that he had repeatedly asked trial counsel to hire a pharmaceutical expert for the defense, but because he had no more money to retain an expert, trial counsel did not obtain an expert or ask the court to appoint one for the defense.  Id.

Petitioner had two different appellate attorneys on his appeal of right, Neil Leithauser and Lee Somerville, who both raised claims of ineffective assistance of trial counsel different from the claims raised here.[3]  In addition to the appellate briefs filed by counsel, Petitioner filed his own pro se supplemental brief on appeal.[4]  Among other claims, Petitioner argued that counsel was ineffective for failing to prepare to challenge the prosecution's methodology in calculating the weights of the missing drugs and that he was, therefore, unprepared to challenge the foundation for Exhibit 37 and to properly cross-examine the prosecution's experts.  See Def.-Appellant

_____

[3] Leithauser argued that trial counsel was ineffective for failing to object to the prosecution's belated request to add an aiding and abetting instruction.  See Leithauser Br. at PageID.1516-1519 (Dkt. 6-8).  Sommerville argued that one of Petitioner's attorneys discharged prior to the trial was ineffective for waiving a preliminary examination and that trial counsel Sheldon Halpern was ineffective because he (i) was unprepared for trial and sentencing, (ii) failed to conduct discovery, (iii) quarreled with the trial judge, and (iv) conceded Petitioner's guilt without Petitioner's agreement.  See Sommerville Br. at 1572-1575 (Dkt. 6-8).  The appellate court considered these claims.  See Kane, 2015 WL 1542160 at *7-10.

[4] Standard 4 of Administrative Order 2004-6, 471 Mich. cii (2004), "explicitly provides that a pro se brief may be filed within 84 days of the filing of the brief by the appellant's counsel, and may be filed with accompanying motions."  Ware v. Harry, 636 F. Supp. 2d 574, 594 n.6 (E.D. Mich. 2008).

Standard 4 Brief on Appeal at PageId.1614-1617 (Dkt. 6-8).  Petitioner also filed a pro se motion for the Michigan Court of Appeals to remand the case to the trial court for an evidentiary hearing on his ineffective assistance of counsel claims.  See Mot. to Remand at PageID.1752-1759 (Dkt. 6-8).  Within that motion, Petitioner also argued that "he charged [trial] counsel with finding an alternative expert to establish the drug weights."  Id. at 1756-1757.[5]  The court of appeals denied Petitioner's motion to remand.  People v. Kane, No. 318237, at PageID.2164 (Mich. Ct. App. Nov. 25, 2014) (Dkt. 6-9).  Then, it affirmed Petitioner's conviction, addressing the claims raised in his Petitioner's standard 4 brief, but not trial counsel's failure to consult with or call an expert.  Kane, 2015 WL 1542160, at *7-10.

While Petitioner's direct appeal was pending, he retained Dr. Rodney Richmond, R.Ph., an expert in pharmaceuticals, who reviewed the C-2 documents.  Richmond prepared an analysis of the prosecution's Exhibits 36 and 37, finding significant errors that were never brought out before the jury.  Petitioner attempted to present this new evidence brought forward by Richmond in his Application for Leave to Appeal to the Michigan Supreme Court.  See Richmond Aff. at PageID.2063 (Dkt. 6-8); Richmond 10/10/15 Ltr. to Petitioner at PageID.2064-2066 (Dkt. 6-8).  The Michigan Supreme Court denied leave to appeal and also denied Petitioner's motions to remand, to stay and amend the application, and to supplement and expand the record.  People v. Kane, 873 N.W.2d 570 (Mich. 2016); recons. den. 878 N.W.2d 288 (Mich. 2016).

---

[5]  Petitioner's standard 4 brief and his motion to remand were not filed with the Rule 5 materials from his appeal of right in the court of appeals, which can be found generally in Dkt. 6-9, but were filed under the docket entry for the materials filed with Petitioner's application for leave to appeal to the Michigan Supreme Court.  See generally Dkt. 6-8.  However, the cover sheet for Petitioner's motion to remand is included within the docket entries for the pleadings filed in the court of appeals on the appeal of right.  See Dkt. 6-9 at PageID.2250. The heading on the standard 4 brief and Petitioner's motion to remand indicates also that they were filed in the court of appeals.

In his post-conviction motion for relief from judgment, Petitioner again presented Richmond's findings. See Richmond Aff. and CV at PageID.2487-2497 (Dkt. 6-10). Petitioner also retained John Mudri, of Mudri Associates, Inc., an expert in the area of pharmaceutical auditing and accountability. Mudri reviewed pertinent trial testimony and signed an affidavit severely critiquing the methodology utilized by the prosecution's witnesses, Gindlesberger and Crampton. Mudri 5/4/2017 Aff. and CV of John Mudri, at PageID.2498-2510 (Dkt. 6-10).[6]

Petitioner claimed that the inadequacies of the perpetual inventory maintained by the pharmacy and the methodology of accounting for the missing drugs seriously undermined the evidence and called into question his convictions. Petitioner again alleged that trial counsel was ineffective for failing to consult with an expert or call an expert to rebut the prosecution witnesses' testimony concerning the amount of controlled substances taken. See Motion for Relief From Judgment at PageID.2435, 2455 (Dkt. 6-10). Petitioner also alleged that appellate counsel was ineffective for failing to raise a claim concerning trial counsel's ineffectiveness. Petitioner specifically requested an evidentiary hearing on his claims. Id. at 2431.[7]

The trial court did not rule on the merits of these new claims, instead finding, in a one-paragraph order, (i) that Petitioner failed to show cause for failing to raise these claims on his appeal of right, and (ii) that Petitioner failed to show actual prejudice. People v. Kane, No. 11-4710-FH, at PageID.115-116 (Jackson Cty. Cir. Ct. July 24, 2017) (Dkt. 1-5). The court of appeals denied Petitioner leave to appeal in a form order, on the ground that Petitioner "failed to establish

---

[6] Petitioner has also attached this information to his petition (Dkts. 1-12, 1-13).

[7] The motion actually states, "An evidentiary record is required for this court to evaluate Defendant's claims and is allowed under MCR 6.508(C)." Motion for Relief from Judgment at PageID.2431 (emphasis added). Because Michigan Court Rule 6.508(C) refers to evidentiary hearings, Petitioner's obvious intent was to request a hearing.

that the trial court erred in denying the motion for relief from judgment." People v. Kane, No. 341694, at PageID.118 (Mich. Ct. App. Aug. 21, 2018) (Dkt. 1-6).  The Michigan Supreme Court denied leave to appeal on the ground that Petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  People v. Kane, 923 N.W.2d 241 (Mich. 2019), recons. den., 929 N.W.2d 329 (Mich. 2019).

This petition for habeas corpus followed.

## II.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides a standard of review for habeas petitions brought under 28 U.S.C. § 2254:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

However, when a state court fails to adjudicate a habeas petitioner's claim on the merits, a federal court is required to review that claim de novo.  See Cone v. Bell, 556 U.S. 449, 472 (2009); See also McKenzie v. Smith, 326 F. 3d 721, 726 (6th Cir. 2003).

## III.  DISCUSSION

As explained below, Petitioner is granted an evidentiary hearing on his claim that trial counsel was ineffective by failing to consult with or call an expert witness and that appellate

counsel was ineffective for failing to raise these claims on his appeal of right.  However, Petitioner is not entitled to an evidentiary hearing on his other claims.

The Court's reasoning proceeds in four parts.  First, the Court distinguishes those ineffective assistance of counsel claims warranting a hearing from those that do not warrant a hearing.  Some of Petitioner's ineffective assistance of counsel claims were addressed by the state court.  Those claims will be reviewed under AEDPA's deferential standard and are outside the scope of the evidentiary hearing.  Other claims were not addressed by the state court, and those claims will be the subject of the evidentiary hearing and will ultimately be reviewed de novo.  Second, the Court explains why an evidentiary hearing is warranted for claims related to trial counsel's failure to consult with or call an expert witness—namely, that material facts were not developed at the state court level, and a hearing could enable Petitioner to prove factual allegations that could potentially entitle him to federal habeas relief.  Third, the Court explains that § 2254(e)(2) does not prohibit a hearing, because Petitioner exercised diligence in attempting to develop the factual basis of his claim in state court.  Fourth, the Court rejects Respondent's argument that Petitioner's claims were procedurally defaulted.

**A. The state courts neither allowed Petitioner to develop the factual record for his ineffective assistance of counsel claims related to the failure to consult with or call expert witnesses, nor adjudicated those claims on the merits.  Therefore, the claims will be reviewed de novo and the Court may consider evidence beyond the record presented at state court.**

Petitioner's ineffective assistance of counsel claims can be grouped into three categories: (i) those he has explicitly abandoned, (ii) those he raised on his appeal of right and presents in this action, and (iii) those he did not raise in his appeal of right but presents here.  See Pet. Br. at 13-41.  Claims within the first category bear no further mention.  As for the second category, Petitioner acknowledges that the court of appeals addressed and rejected all of the non-abandoned ineffective

9

assistance of counsel claims raised in Petitioner's appeal of right. Id. at 15. Whether he seeks an evidentiary hearing on those claims is not entirely clear from his briefing, but the law is clear that he is not entitled to such a hearing. Habeas review under 28 U.S.C. §2254(d) is "limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011). Petitioner's claims involving his counsel's failure to timely obtain the discovery in order to properly cross-examine the prosecution's witnesses, counsel's failure to prepare, and counsel's failure to raise evidentiary challenges will all be decided based on the record presented before the state court. Furthermore, as Petitioner acknowledges, those claims will be evaluated under AEDPA's deferential standard. Pet. Br. at 15.[8]

Petitioner's expert-related claims—the third category of ineffective assistance of counsel claims—were not adjudicated on the merits. This is relevant both to the need for an evidentiary hearing and to the standard of review that will be applied when the petition is ultimately adjudicated.

Although Petitioner briefly alluded to his trial counsel's failure to consult with an expert in his motion to remand while his appeal of right was pending, neither he nor his appellate counsel squarely raised the expert-related claims during that appeal. The court of appeals, in a generally

---

[8] One claim that Petitioner places in the third category actually belongs in the second. In addition to the expert-related claims, Petitioner argues that an additional claim was not addressed by the state court: trial counsel's failure "to know and understand a critical point of law, namely, that it was **his** responsibility to obtain the pharmacy records in possession of a third party, and the prosecution had no obligation under [Brady v. Maryland, 373 U.S. 83 (1963)] to turn over documents that were equally available to the defense." Pet. Br. at PageID.46 (emphasis in original). Relatedly, he argues that appellate counsel was ineffective for raising "a Brady issue" rather than an ineffective assistance of counsel claim for failing to obtain the pharmacy records by other means. Id. at PageID.75. However, as will be more fully explained in the final adjudication of this habeas petition, the court of appeals' discussion of alleged discovery errors by trial counsel entitles the state to AEDPA deference and precludes a hearing.

10

thorough and comprehensive opinion, did not mention trial counsel's failure to consult with or call an expert when discussing the other ineffective assistance of counsel claims.  See Kane, 2015 WL 1542160, at *7-10.  The Michigan Supreme Court, although presented with evidence from Richmond, issued an unreasoned opinion denying leave to appeal and denying Petitioner's motions to remand, to stay and amend the application, and to supplement and expand the record.  Kane, 873 N.W.2d at 570.

Respondent does not argue that the expert-related claims were adjudicated on the merits during the appeal of right, instead relying on procedural default (addressed below) as a defense against consideration of these claims.  See Resp. at PageID.460 (Dkt. 5).  And in adjudicating Petitioner's motion for relief from judgment, the state trial court presented its view that the expert-related claims were not adjudicated on the merits during the appeal of right.  The trial court's order rejecting the motion for relief from judgment states the following:

> IT IS THE ORDER OF THIS COURT that upon review the defendant has [failed] to show good cause as to why he did not bring this claim on appeal, also that there was any actual prejudice.  Therefore, Defendant's motion is DENIED.

Order Following [Motion] For Relief From Judgment at PageID.2358 (Dkt. 6-10).

"Cause" and "prejudice" are relevant to Michigan Court Rule 6.508(d)(3)—the basis for denying claims that could have been raised on direct appeal—not to Michigan Court Rule 6.508(D)(2)—the basis for denying relief on grounds that were decided against a defendant in a prior appeal or proceeding.  There is no evidence that the Michigan Court of Appeals or Supreme Court adjudicated the expert-related claims during the appeal of right.

Finally, the state courts' adjudication of Petitioner's motion for relief from judgment was not an adjudication on the merits and did not purport to be.  In that motion, Petitioner squarely raised his expert-related claims for the first time.  Mot. for Relief From Judgment at PageID.2427-

2431.  Petitioner also raised an ineffective assistance of appellate counsel claim for the first time. Id. at PageID.2430-2431.  As discussed above, the trial court denied the motion on procedural grounds, namely, Michigan Court Rule 6.508(d)(3).  The Michigan appellate courts denied Petitioner leave to appeal in a form order without addressing the merits of the claims.  Petitioner's claims were not adjudicated on the merits in his state post-conviction proceedings.[9]

In this case, as the Sixth Circuit put it in McKenzie, "there are simply no results, let alone reasoning, to which this court can defer.  Without such results or reasoning, any attempt to determine whether the state court decision 'was contrary to, or involved an unreasonable application of clearly established Federal law,' 28 U.S.C. § 2254(d)(1), would be futile." McKenzie, 326 F. 3d at 727.

In addition, because there was no decision on the merits of Petitioner's expert-related ineffective assistance of counsel claims, the Supreme Court's holding in Cullen v. Pinholster, 563 U.S. 170, 181 (2011) does not prohibit this Court from conducting an evidentiary hearing on his claims. See McClellan v. Rapelje, 703 F.3d 344, 351 (6th Cir. 2013).  And as discussed in the following sections, a hearing is necessary to adjudicate these claims and is not barred by AEDPA.

**B. Petitioner has raised potentially meritorious ineffective assistance of counsel claims, warranting an evidentiary hearing.**

In deciding whether to grant an evidentiary hearing to a habeas petitioner, a federal habeas court must consider whether such a hearing could enable the habeas petitioner to prove the petition's factual allegations, which, if true, would entitle the petitioner to federal habeas relief. See Schriro v. Landrigan, 550 U.S. 465, 474 (2007).  A habeas petitioner is generally entitled to

---

[9] Section III.D. of this opinion describes in greater detail the Court's conclusion that these orders were procedural, but that Petitioner's claims are not barred by procedural default.

12

an evidentiary hearing if he or she "alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing." Sawyer v. Hofbauer, 299 F.3d 605, 610-611 (6th Cir. 2002). If there are factual issues in dispute and an insufficient record upon which to resolve a legitimate claim of ineffective assistance of counsel, a habeas court must conduct an evidentiary hearing to resolve the issue. Paprocki v. Foltz, 869 F.2d 281, 287 (6th Cir. 1989).

The Court finds that Petitioner is entitled to an evidentiary hearing on the expert-related ineffective assistance of counsel claims. There are factual issues that are disputed here, were never resolved by the state courts, and must be resolved before the expert-related claims are finally adjudicated. The remainder of this section describes the legal standard for adjudicating ineffective assistance claims and explains why a hearing is necessary before that standard can be applied to Petitioner's claims.

### 1. Legal Standard

To show that he or she was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland v. Washington, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. Id. In other words, a defendant must overcome the presumption that, under the circumstances, the challenged action might have been sound trial strategy. Id. at 689. Second, the defendant must show that such performance prejudiced his defense. Id. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's

13

unprofessional errors, the result of the proceeding would have been different." Id. at 694. The Strickland standard applies as well to claims of ineffective assistance of appellate counsel. See Whiting v. Burt, 395 F. 3d 602, 617 (6th Cir. 2005).

### 2. Deficient Performance

In some criminal cases, "the only reasonable and available defense strategy requires consultation with experts or introduction of expert evidence." Harrington, 562 U.S. at 106. Courts in various contexts have found trial counsel ineffective for failing to call an expert witness at trial to rebut a prosecution's expert witness. See, e.g., Ceasor v. Ocwieja, 655 F. App'x 263, 287-289 (6th Cir. 2016) (stating that trial counsel may have been ineffective in a child abuse case for failing to call expert to rebut prosecution experts' theory that the victim had been injured through shaken baby syndrome); Dendel v. Washington, 647 F. App'x 612, 614-616 (6th Cir. 2016) (stating that trial counsel in a murder case was ineffective for failing to locate and call an expert to testify that the victim died from a combination of drugs that he had been taking); Stermer v. Warren, 360 F. Supp. 3d 639, 664-668 (E.D. Mich. 2018) (stating, in an arson case, that trial counsel performed inadequately in failing to seek information related to arson investigations, familiarize himself with applicable industry standards for fire investigation, consult with an expert in the origin and cause of fire, or consult a single expert witness to ascertain other plausible causes of the fire); Leonard v. Michigan, 256 F. Supp. 2d 723, 731-734 (W.D. Mich. 2003) (stating that state court unreasonably applied Strickland standard in finding that petitioner was not denied effective assistance of counsel by attorney who failed to timely move for or obtain expert assistance in case in which DNA evidence was central, who failed to prepare for either suppression hearing or trial, who stipulated to admission of expert's suppression hearing testimony at trial, and who failed to

engage in vigorous cross examination of experts, despite flaws in analysis and gaps in expertise of those who performed and analyzed tests).

Here, counsel's performance may well have been so deficient, because of the significant possibility that an expert could have undermined the method by which the prosecution proved elements of its case.  In attempting to prove the amounts and weights of the various controlled substances stolen, the prosecution used the pharmacy's C-2 logs for each drug to try to show what was at the pharmacy at the time of the break-in.  The prosecution also attempted to show, through the testimony of two pharmacy employees, that certain amounts of each drug remained on site after the break-in.  The difference between the type and amount of controlled substances that were allegedly "on hand" before the break-in and what remained after the break-in constituted the prosecution's evidence as to the amount and weight of the drugs taken by Petitioner.  The prosecution also presented evidence of the "weight" of each pill through the testimony of its pharmacist witnesses and the equipment technologist for Allegiance Health, who testified to the calibration of the scales used to weigh the pharmaceuticals.  After calculating the weight of each pill, the aggregate weight of the drug for each category was calculated by multiplying the weight of each pill times the number of pills taken.  The prosecution's proofs relied on the accuracy of the running/perpetual inventory as reflected in the C-2 logs and the validity of the method used to calculate the weights of the drugs taken.

Petitioner had the C-2 reports of the pharmacy examined by Richmond, an expert in pharmacy practices, audits, federal and state laws, and the maintenance of pharmacy records regarding controlled substances.  See Richmond Aff. at PageID.143 (Dkt. 121).  Richmond purportedly examined the pharmacy's C-2 records that were introduced at trial, including "a single sheet which appeared to list drugs that were apparently missing after the pharmacy break-in."

Id. at PageID.137.  He refers to this sheet as the "calculation sheet."  Id. at PageID.138.  He concluded that there were serious inaccuracies in the record, and that the "perpetual inventory" overstated (or in some cases understated) the amount of certain specified controlled substances on hand at the time of the break-in by an amount to call into serious question whether the prosecution established beyond a reasonable doubt the "weights" of the controlled substances charged.  Id. at PageID.138  Richmond found a number of discrepancies.  He determined that for the drugs for which the prosecution calculated a total number of grams calculated (i.e. not counting additional drugs he found missing but did not appear on the calculation sheet), there were 640.26 grams missing rather than the 808.34 grams recorded on the calculation sheet.  Id.  In several instances, he stated that certain entries in the copy of the C-2 log he was provided were unreadable, and that if no better copies were available, "there would be no way to determine for certain how many tablets [were] missing from stock."  Id. at PageID.139-141.  Additionally, Richmond identified discrepancies in the quantities of Oxycodone pills reported in the C-2 log and the quantities reported in a biannual DEA inventory that occurred on May 20, 2010.  Id. at PageID.141-142.

Petitioner also retained Mudri, an expert in pharmacy accountability and regulatory compliance, to examine the methodology used by prosecution witnesses Gindelsberger and Crampton to estimate the weight of the missing controlled substances.  Mudri concluded that this methodology was flawed and unreliable:

> I have reviewed the testimony of Scott Gindlesberger and Thomas Crampton, and the C-2 logs of the perpetual inventory.  In my opinion, I do not believe that the perpetual logs would provide an accurate basis to calculate the amounts taken from the pharmacy on September 3, 2010.  The perpetual inventory is a secondary record based on receiving and dispensing of dosage units, it could be used if the counts were verified to be accurate, but receiving records and prescriptions are usually the primary records in any accountability review.  In many situations computerized summaries of activities are used in connection with this accountability review.  In

16

ordinary practice, a complete accountability verification would have to be done before a perpetual inventory would be accepted as accurate.

Mudri Aff. at PageID.149 (Dkt. 1-13).

In light of Mudri and Richmond's statements, it is difficult, if not impossible, to understand how electing not to consult with or call an expert would constitute sound trial strategy. Petitioner is entitled to develop this claim further.

### 3. Prejudice

Respondent argues that Petitioner was not prejudiced by any of counsel's deficiencies regarding the calculation of the weights and amounts of drugs taken because Petitioner's guilt was overwhelming. However, the evidence against Petitioner concerning the weights of the drugs stolen was based entirely on circumstantial evidence involving expert-estimated extrapolations, raising the question of what Petitioner could have done with his own expert.

The most serious offense that Petitioner was convicted of was possession of at least 450 grams but less than 1,000 grams of oxycodone. This normally carries a penalty of not more than 30 years in prison. Mich. Comp. Laws § 333.7401(2)(a)(ii). However, Petitioner was also convicted for being a second or subsequent drug offender, which doubles the maximum penalty of the underlying drug offense. Mich. Comp. Laws § 333.7413(2). Petitioner's maximum sentence for this crime was 60 years; Petitioner, in fact, was sentenced to 40 to 60 years on the oxycodone conviction. If Petitioner's experts could raise doubts that Petitioner stole over 450 grams of oxycodone, he could only be convicted of possession of 50 grams or more, but less than 450 grams of a controlled substance, which carries a 20-year maximum sentence. See Mich. Comp. Laws § 333.7401(2)(a)(iii). Even with the career offender charge, Petitioner's maximum sentence would only be 40 years, which was the minimum sentence he received on the oxycodone conviction. By

contrast, Petitioner was sentenced to 20 to 40 years on the other drug offenses that involved amounts of more than 50 but less than 450 grams.  So Petitioner might be able to reduce the bottom and top range of his sentence by 20 years each.

The Sixth Circuit has noted that "a reasonable probability of acquittal is not a requirement to be shown by a defendant seeking to demonstrate prejudice resulting from his counsel's deficient performance; rather, a defendant is required to demonstrate a reasonable probability of a different outcome—a somewhat lower burden for a defendant." Walker v. Hoffner, 534 F. App'x 406, 412 (6th Cir. 2013).  Petitioner's claim that he would have been convicted of a lesser offense had counsel consulted with expert witnesses or called them for the defense is sufficient, if proven, to establish prejudice for purposes of Strickland.

Respondent argues that Petitioner has failed to make an initial showing that he has grounds for relief through "affidavits and the like," rather than through conclusory statements.  Resp. at PageID.461-462 (citing Reynolds v. Bagley, 498 F.3d 549, 554 (6th Cir. 2007)).  However, Petitioner has presented far more than conclusory statements in the form of the Mudri and Richmond affidavits.

Finally, Respondent argues that a hearing would accomplish nothing because "Kane's only argument is that the State's figures are not reliable, not that he can prove that the amount taken is less than the statutorily required quantities . . . ."  Resp. at PageID.462.  But determining precisely what Petitioner can prove is the entire point of holding a hearing.  His experts' inability to commit to an exact number may be the effect, as Richmond discussed, of having received a poor copy of the C-2 logs.  An evidentiary hearing may allow Petitioner's experts to reach a more definitive conclusion.  It may also allow Petitioner and his experts to show that a definitive conclusion could not have been reached by the evidence presented at trial, and that had defense counsel called

experts at trial to testify to this fact, no reasonable juror would have found Petitioner guilty beyond

a reasonable doubt of possession of at least 450 grams but less than 1,000 grams of oxycodone.

Or it may prove nothing of value to Petitioner at all.  A hearing is necessary because on the current

record, the Court cannot evaluate whether the expert-related claims warrant habeas relief.

Petitioner has presented enough evidence to create a fact question worthy of further development.

### C. AEDPA does not bar an evidentiary hearing, because Petitioner exercised diligence.

As discussed in the previous section, Petitioner has presented enough evidence of a

potentially meritorious habeas claim as to warrant an evidentiary hearing.  The next question is

whether AEDPA bars such a hearing.

AEDPA states the following:

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

> (A) the claim relies on—
>
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C.§ 2254(e)(2).

Under the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim

by a habeas petitioner is not established unless there is a lack of diligence, or some greater fault,

attributable to the prisoner or prisoner's counsel.  Williams v. Taylor, 529 U.S. 420, 432 (2000).

Id. at 437.  Diligence for purposes of the opening clause of this subsection of AEDPA depends

upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court; it does not depend upon whether those efforts would have been successful.  Id. at 435.  Diligence will require that the petitioner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law.  Id.

Federal-state comity—a crucial value of AEDPA—is not served by stating that a prisoner has "failed to develop the factual basis of a claim" where he or she was unable to develop his or her claim in state court despite diligent efforts to do so.  Id. at 437.  In that circumstance, an evidentiary hearing is not barred by U.S.C. § 2254(e)(2), and the Petitioner is excused from showing compliance with the balance of the subsection's requirements (i.e. § 2254(e)(2)(A)-(B)). Williams, 529 U.S. at 437.

Here, the Court finds that Petitioner exercised due diligence in attempting to develop the factual basis of his claim in the state courts.  While Petitioner's appeal of right was pending, Petitioner filed a pro se motion to remand for an evidentiary hearing in which he called attention to his counsel's failure to find "an alternative expert to establish the drug weights."  See Mot. to Remand at PageID.1752-1759 (Dkt. 6-8).  Petitioner's attempt to obtain an evidentiary hearing by filing a pro se motion to remand in the court of appeals is evidence that he acted with due diligence in attempting to develop his claim in the state court, so as to entitle Petitioner to an evidentiary hearing before this Court.   See Robinson v. Howes, 663 F.3d 819, 824 (6th Cir. 2011). Furthermore, Petitioner provided an affidavit to one of his appellate attorneys stating that Petitioner had told his trial counsel to call an expert witness, demonstrating further diligence in

20

Petitioner's effort to raise the claim.  See Kane July 31, 2017 Aff., Ex. E to Sommerville Br., at PageID.1593 (Dkt. 6-8).[10]

Petitioner then attempted to present new evidence in support of his ineffective assistance of counsel claim in the form of a letter from Richmond in his application for leave to appeal to the Michigan Supreme Court as well as a motion to remand, a motion to amend the application for leave to appeal, and a motion to expand the record.  When the Michigan Supreme Court denied leave to appeal, Petitioner again attempted to develop the factual basis for his ineffective assistance of trial counsel claim and related ineffective assistance of appellate counsel claim by seeking an evidentiary hearing on these claims in his post-conviction motion for relief from judgment and presenting Richmond's and Mudri's affidavits in support of his claims.  Under the circumstances, Petitioner exercised due diligence in attempting to develop his ineffective assistance of counsel claim, so as to entitle him to an evidentiary hearing.  See Couch v. Booker, 632 F.3d 241, 245 (6th Cir. 2011) (holding that petitioner diligently presented his ineffective-assistance-of-counsel claim in state court in appealing his conviction for second-degree murder, and thus he was entitled to evidentiary hearing on federal habeas review; diligence was shown by petitioner's objection in the state proceeding to way counsel handled it, petitioner's pro se motion for new hearing to introduce new evidence supporting his claim, and his continued efforts to press his claim in collateral state-court proceedings following affirmance of his conviction).

---

[10] Respondent faults Petitioner for failing to raise the expert-related claims in his standard 4 brief. See Resp. at PageID.460.  It is unclear whether this argument was meant to prove that Petitioner failed to act diligently (the issue relevant here), or whether that argument simply related to the question of procedural default (an issue addressed below).  To the extent Respondent makes the former argument, it fails in light of Petitioner's motion to remand to hold a hearing to develop this claim.

**D.  Petitioner's claims are not dismissed as procedurally defaulted.**

A  habeas  petitioner  procedurally  defaults  a  claim  when  the  following  elements  are established:

> (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default.

Guilmette v. Howes, 624 F.3d 286, 290 (6th Cir. 2010)

Respondent  argues  that  Petitioner's  expert-related  claims  were  procedurally  defaulted because he failed to raise them on his direct appeal and failed to show cause and prejudice for not raising these claims on his direct appeal.  Resp. at PageID.460.  The state rule at issue is Michigan Court Rule 6.508(d)(3), which states the following:

> (D) Entitlement to Relief. The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion . . .

> (3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates

>> (a) good cause for failure to raise such grounds on appeal or in the prior motion, and
>> (b) actual prejudice from the alleged irregularities that support the claim for relief.

Mich. Ct. R. 6.508(d)(3).[11]

---

[11] Respondent does not explicitly state that subsection (d)(3) is the basis for the procedural default, but his citation of Thirkfield v. Pitcher, 199 Supp. 2d 637, 649 (W.D. Mich. 2002), a case involving (d)(3) default, indicates that Respondent is invoking that subsection.

As discussed in section III.A. of this opinion, the trial court's discussion of "cause" and "prejudice" plainly indicates that it denied the motion for relief from judgment under Michigan Court Rule 6.508(d)(3). The appellate court opinions did not disturb this ruling.[12]

Petitioner explicitly argues that the denial of Petitioner's motion for relief from judgment was procedural, Pet. Br. at PageID.31, implicitly conceding the second of Guilmette's four elements. Respondent treats this argument as a concession that "whatever [Petitioner] presented in his second appeal is procedurally defaulted." Resp. at PageID.460. Petitioner claims this presentation is inaccurate, as "Petitioner claimed that even if this Court should find some of the claims to be procedurally barred to the state court's reliance on MCR 6.508, Petitioner could show cause for any such default, consisting of both ineffective assistance of appellate counsel and actual innocence." Reply at PageID.2794. The parties seem to be speaking past each other, perhaps because it is unclear whether a claim meeting the first three of Guilmette's four elements for a procedural default should be labeled as an excused procedural default, or not a procedural default at all. See Guilmette, 624 F.3d at 290. Regardless, the parties appear to be on the same page, and reasonably so, that the trial court enforced a procedural bar on raising claims that were not raised

---

[12] Denials under Rule 6.508(d) can be procedural or on the merits. Guilmette, 624 F.3d at 290-293. When denials by state appellate courts are unreasoned or unexplained, the Court must look to the last reasoned opinion in evaluating whether a Rule 6.508(d) denial was procedural or based on the merits. Guilmette, 624 F.3d at 291-292. "Brief orders citing Michigan Court Rule 6.508(d) are not explained orders invoking a procedural bar." Guilmette, 624 F.3d at 289. The Michigan Supreme Court's order in this case is one such order. See People v. Kane, 923 N.W.2d at 241. The court of appeals denied leave to appeal "because defendant has failed to establish that the trial court erred in denying the motion for relief from judgment." People v. Kane, No. 341694, at PageID.2357 (Dkt. 6-10). Although not a form order citing Rule 6.508(d), it is similarly unexplained, requiring this Court to look back to the trial court's order adjudicating Petitioner's motion for relief from Judgment. Guilmette, 624 F.3d at 291-292.

on Petitioner's appeal of right.  The dispute is whether Petitioner has demonstrated cause and prejudice for doing so.

Before discussing this dispute, it bears mention that the Court owes no deference to the state trial court's determination that Petitioner had not shown cause and prejudice excusing his failure to present the expert-related claims on his appeal of right.  McKinney v. Horton, 826 F. App'x 468, 475 (6th Cir. 2020) (holding that where a state court rejects a claim on procedural grounds under Rule 6.508(d)(3), federal courts "do not defer to the state trial court's decision that [a petitioner] has not shown cause and prejudice for his procedural default").

Concerning prejudice, the court adopts its above reasoning from section III.B.3.  The expert-related claims have the potential to reduce Petitioner's sentence substantially, and he is entitled a hearing to prove that claim.

Concerning cause, Petitioner argues that any possible default should be excused because of the ineffective assistance of appellate counsel.  Ineffective assistance of counsel is cause for procedural default.  Edwards v. Carpenter, 529 U.S. 446, 451-452 (2000).  If Petitioner can show that he received ineffective assistance of appellate counsel, it would excuse his procedural default for failing to raise his underlying ineffective assistance of trial counsel claims on his direct appeal in the state courts.  See Seymour v. Walker, 224 F. 3d 542, 550 (6th Cir. 2000).  At the evidentiary hearing, Petitioner will have the opportunity to prove this claim.  Finally, Petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim.  See Guilmette, 624 F.3d at 291.

Respondent argues that Petitioner is unable to use appellate counsel's ineffectiveness to excuse the default because Petitioner filed his own standard 4 brief on appeal and should have

raised an ineffective assistance of trial counsel claim.  But while failure to raise an argument in a standard 4 brief may in some cases reinforce a conclusion that a claim was defaulted, it is not dispositive.  McKinney, 826 F. App'x at 473-474.

In this case, it would be unjust to hold Petitioner's standard 4 brief against him, as he made a diligent effort to raise the issue.  Although the expert-related claims were not squarely presented in his standard 4 brief, he alerted the court of appeals to his trial counsel's refusal to consult with an expert in his motion to remand, attached to his standard 4 brief.  Mot. to Remand at PageID.1756.  Furthermore, Petitioner provided an affidavit to one of his appellate attorneys stating that Petitioner had told his trial counsel to call an expert witness.  See Kane July 31, 2017 Aff. at PageID.1593.  Petitioner did what he could to raise this claim, and he is entitled to an opportunity to prove that fault lies with his appellate counsel, not him.

Finally, Petitioner was incarcerated during this time period.  In determining whether Petitioner acted with due diligence, this Court "must take into account the conditions of confinement and the reality of the prison system."  Aron v. United States, 291 F.3d 708, 712 (11th Cir. 2002).  Viewed in this light, Petitioner made a worthy effort to preserve his claims, which warrant further development.

## IV.  CONCLUSION

For the reasons stated above, the Court will hold an evidentiary hearing on Petitioner's claims.  A conference with counsel will be convened shortly to discuss the details of the hearing.

SO ORDERED.

Dated:  April 15, 2021                          s/Mark A. Goldsmith
     Detroit, Michigan                     MARK A. GOLDSMITH
                                             United States District Judge