UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN DAVID KANE,

    Petitioner,

Civil Action No. 19-cv-12262

v.

HON. MARK A. GOLDSMITH

NOAH NAGY,

    Respondent,
_____/

**OPINION & ORDER**
**(1) DENYING THE MOTION TO CORRECT FACTUAL FINDINGS, TO ALTER/AMEND THE JUDGMENT, FOR REHEARING, AND FOR A CERTIFICATE OF APPEALABILITY (Dkt. 33) AND (2) DIRECTING THE CLERK OF THE COURT TO REFER PETITIONER'S MOTION FOR A CERTIFICATE OF APPEALBILITY TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT (Dkt. 33)**

Petitioner Brian David Kane filed an application for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, through his attorney Mary A. Owens. Petitioner challenged his conviction for possession of at least 450 grams but less than 1,000 grams of oxycodone, possession of at least 50 but less than 450 grams of morphine, possession of at least 50 but less than 450 grams of methadone, possession of less than 50 grams of hydromorphone, and breaking and entering a store with intent to commit a larceny. This Court denied the petition with prejudice, declined to grant a certificate of appealability, and granted Petitioner leave to appeal in forma pauperis. See Kane v. Nagy, No. 19-12262, 2022 WL 4137811 (E.D. Mich. Sept. 12, 2022).

Petitioner has filed a motion to correct the factual findings, to alter or amend the judgment, for rehearing, and for a certificate of appealability (Dkt. 33). The Court directed Respondent to file a response to the motion (Dkt. 34), which Respondent did (Dkt. 35). Petitioner then filed a reply (Dkt. 36).

For the reasons that follow, the Court denies the motion. The Court also orders that Petitioner's motion for a certificate of appealability be transferred to the United States Court of Appeals for the Sixth Circuit.

## I. STANDARD OF REVIEW

Petitioner brings his motion under Federal Rules of Civil Procedure 52 and 59 and under Local Rule 7.1.

A Rule 52(b) motion to alter or amend findings of fact or conclusions of law is essentially a motion seeking reconsideration of the court's factual findings and legal conclusions. See, e.g., Shivers v. Grubbs, 747 F. Supp. 434, 436 (S.D. Ohio 1990). Motions for reconsideration of final orders and judgments are no longer permitted under Local Rule 7.1 but must be brought under Federal Rules of Civil Procedure 59(e) or 60(b). See Lunn v. City of Detroit, No. 19-13578, 2022 WL 1515533, at * 1 (E.D. Mich. May 13, 2022) (citing E.D. Mich. LR 7.1(h)(1)).

The decision of whether to grant a motion to alter or amend a judgment under Rule 59 is within the district court's discretion. Davis by Davis v. Jellico Cmty. Hosp., Inc., 912 F. 2d 129, 132 (6th Cir. 1990). A motion to alter or amend a judgment will generally be granted if the district court made a clear error of law, if there is an intervening change in the controlling law, or if granting the motion will prevent manifest injustice. GenCorp, Inc. v. Am. Int'l Underwriters, 178 F. 3d 804, 834 (6th Cir. 1999); see also Gritton v. Disponett, 332 F. App'x 232, 238 (6th Cir. 2009). "A Rule 59 motion 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" Brumley v. United Parcel Serv., Inc., 909 F.3d 834, 841 (6th Cir. 2018) (quoting Exxon Shipping Co. v. Baker, 554 U.S. 471, 486 n.5 (2008). Moreover, it is "well established" that Rule 59(e) relief is not warranted "when [a motion] is premised on evidence that the party had in [his or her] control prior to the

original entry of judgment." Zucker v. City of Farmington Hills, 643 F. App'x 555, 567 (6th Cir. 2016). Finally, a Rule 59(e) motion to alter or amend a judgment is not a substitute for an appeal. See Johnson v. Henderson, 229 F. Supp. 2d 793, 796 (N.D. Ohio 2002).

## II. DISCUSSION

The Court addresses each of Petitioner's arguments in turn.

### A. Addressing Petitioner's Ineffective Assistance of Counsel Claims

Petitioner first argues that this Court, in framing Petitioner's various ineffective assistance of trial counsel claims, failed to address several of his ineffective assistance of trial counsel claims, namely, Petitioner's allegation that counsel failed to obtain discovery, was unprepared to show the discrepancies in the records, and was ignorant of the law. Mot. at PageID.3816–3817.

Although the Court did not mention these specific allegations when framing the issues, all of these allegations were subsumed in the claims that the Court addressed, namely, that trial counsel was ineffective for: (i) failing to consult with and present an expert in pharmacy accountability, (ii) failing to consult with and present an expert in the methodology for accounting for controlled substances, (iii) failing to conduct a competent cross-examination of the state's expert witnesses, and (iv) failing to call experts to rebut the state's calculation of the amount of controlled substances that were stolen. 9/12/22 Op. & Order at PageID.3792–3793 (Dkt. 31). Petitioner's additional allegations were part and parcel of the overall claim that trial counsel was ineffective in several ways in failing to challenge the methodology used by the prosecution's expert witnesses at extrapolating the weight of the drugs stolen from the pharmacy and the accuracy of the pharmacy's records concerning the amount and type of drugs that had been stolen. The Court declines to grant relief from judgment because Petitioner is rehashing issues that were rejected by this Court when denying the petition for writ of habeas corpus.

### B. Trial Counsel's Cross-Examination and Lack of Expert

Petitioner next contends that this Court overlooked Petitioner's allegation that his trial counsel's cross-examination was deficient because his trial counsel was unprepared to challenge Prosecution Exhibit 37 due to the fact that trial counsel had not obtained the C-2 logs until midway through the trial. Petitioner points to the fact that, on his appeal of right, the Michigan Court of Appeals suggested that counsel was deficient for failing to obtain certain documents prior to trial. Petitioner also argues that this Court erred in stating that trial counsel did not believe an expert was necessary because he believed he could show that the C-2 logs contained errors through cross-examination of the prosecution witnesses alone. Petitioner argues that this is clear factual error because counsel had already determined that an expert was not necessary after he talked to a friend of his who was a retired pharmacist, but before he obtained the C-2 records. Mot. at PageID.3817–3818. Petitioner also asserts that this Court erred in finding trial counsel's cross-examination of the prosecution witnesses to be adequate because counsel's cross-examination of Dr. Gindlesberger and Dr. Crampton did not at all cover the following: the necessity of using the underlying primary records when accounting for theft; the serious flaws in Exhibits 36 and 37 such that the pharmacy would have been fined; the necessity of an accurate starting and end point in an audit; that the starting and ending points as represented in Exhibit 37 and the bottom line method were completely unreliable in this case; and the fact that the illegibility of many records made it impossible to calculate the starting and ending points of the pharmacy's inventory. Id. at PageID.3823. Petitioner further argues that trial counsel could not show the unreliability of Exhibits 36 and 37 and of the C-2 logs without expert assistance to explain exactly how pharmacy accountability must be conducted. Id. at PageID. 3822.

The Court ruled that trial counsel was not deficient for failing to call an expert witness because counsel cross-examined the prosecutor's expert witnesses in great detail concerning the problems with their reports and obtained admissions from the prosecution witnesses that there were problems with their calculations as to the drug amounts. Kane, 2022 WL 4137811, at * 6–*7. After discussing at great length trial counsel's elicitation from the witnesses the various problems with their calculation of the drug amounts, the Court concluded:

> Here, [counsel] did cross-examine extensively. He brought out the deficiencies and limitations in the prosecution experts' testimony, thereby undercutting the prosecution's case. While calling a defense expert might have provided an additional avenue of attack, a defense attorney is not ineffective for failing to put on the best case imaginable. See Crehore v. United States, 127 F. App'x 792, 796 (6th Cir. 2005) ("[A] defendant is entitled to competent representation, but not a perfect defense.").

Id. at * 7.

While the Court did not specifically list all the areas of cross-examination that Petitioner believed should have been covered, the Court found that counsel's cross-examination elicited sufficient information to call into question the credibility of the prosecution witnesses and their calculation of the drug amounts and that any additional questioning would have been cumulative. Trial counsel is not ineffective in failing to introduce cumulative impeachment evidence. See Wong v. Belmontes, 558 U.S. 15, 22–23 (2009); see also United States v. Pierce, 62 F. 3d 818, 833 (6th Cir. 1995). While acknowledging that trial counsel could have perhaps engaged in additional lines of attack, the Court observed that "counsel is not ineffective for failing to put on the best case imaginable." Kane, 2022 WL 4137811, at * 7.

### C. Prejudice

Petitioner next argues that the Court erred in concluding that he was not prejudiced by counsel's alleged deficiencies.

5

Petitioner first contends that the Court erred in failing to make any factual findings on the one conviction as to which Dr. Richmond's calculations definitively showed that the amounts stolen were beneath the statutory amount, namely, the charge of possession of methadone between 50–449 grams, Mich. Comp. L. § 333.7401(2)(a)(3). Dr. Richmond's findings as to the missing methadone was 33.96 grams.

Assuming that Dr. Richmond's findings would change the amount of the methadone, it would not be grounds to alter or amend the judgment, because the methadone possession charge was not the most serious charge of which Petitioner was convicted. The most serious offense of which Petitioner was convicted was possession of at least 450 grams but less than 1,000 grams of oxycodone. This offense normally carries a penalty of not more than 30 years in prison. Mich. Comp. L. § 333.7401(2)(a)(ii). However, Petitioner was also convicted for being a second or subsequent drug offender, which doubles the maximum penalty of the underlying drug offense. Mich. Comp. L. § 333.7413(2). Petitioner was sentenced to 40 to 60 years in prison on this count. As mentioned in the initial opinion and order and again mentioned below, the proposed testimony of Petitioner's experts would not have likely led to a reduction as to the amount of oxycodone, the most serious offense. Moreover, even if the amount of methadone stolen in this case was under 50 grams, the maximum penalty for possession of under 50 grams of methadone is 20 years, the same penalty as possession of 50–449 grams of methadone. See Mich. Comp. L. § 333.7401(2)(a)(4). As a second or subsequent drug offender, Petitioner could still have faced a maximum penalty of 40 years on the charge of possession of under 50 grams of methadone. Petitioner has not shown that he was prejudiced by trial counsel's failure to challenge the amount of methadone taken, nor has he shown that the judgment in this case should be altered or amended.

6

Petitioner also argues that this Court made another clear error of fact when it stated, "While the pharmacy did not have the stolen pills, Respondent claims that they did have the weight of individual pills based on the same manufacturer and lot number . . . Mudri's testimony did not account for any of this." Kane, 2022 WL 4137811, at * 7. Petitioner claims that this is an erroneous reading of the record. Gindlesberger testified that the pharmacy ordered replacement pills for weighing based on an identical NDC code, not an identical lot number. Petitioner argues that both the Court and Respondent confused the "lots" of the pills with the "NDC" codes of the pills. Petitioner further notes that Mudri did testify to the difference in "lot" weight variances in opining that the prosecution's methodology was not an accurate way to calculate the weights of the missing pills. Mudri testified that one would have to get pills from the same "lot" number to conduct an average weight of all pills in the same "lot." Mot. at PageID. 3825.

Petitioner does not offer any argument as to how the weights of these drugs would be different using the NDC Code rather than the lot number. Petitioner also ignores the next part of this Court's finding:

> More importantly, where similar pills were unavailable, they were not counted. Over 500 pills presumed stolen were not even included in the weight figures because no similar pill could be obtained to weigh. 2/26/13 Jury Trial Tr. at PageID.925–928. Respondent, in fact, notes that 628 of the reported 1,919 missing oxycodone pills apparently were not counted in this weight because there were no individual pills from which to ascertain the weight of an individual pill. See Prosecution's Exhibit 37. Mudri's testimony did not account for any of this.

Kane, 2022 WL 4137811, at * 7.

Next, Petitioner argues that this Court employed the improper standard for determining prejudice in an ineffective assistance of counsel claim. Petitioner argues that this Court used an outcome-determinative standard for determining prejudice, rather than Strickland's standard that the defendant must show that "there is a reasonable probability that, but for counsel's

7

unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984).

The Court quoted the Strickland reasonable probability standard for determining prejudice at the start of the discussion of Petitioner's ineffective assistance of trial counsel claim. Kane, 2022 WL 4137811, at * 3. The Court did not mention or use an outcome-determinative standard when finding that Petitioner failed to show that he was prejudice by counsel's alleged deficiencies in challenging the methodologies used to calculate the drug amounts in this case. See id. at * 8. Petitioner is not entitled to have the judgment altered or amended in this case.

### D. Ineffective Assistance of Appellate Counsel Claim

Petitioner further argues that the Court erred in rejecting Petitioner's related ineffective assistance of appellate counsel claim by finding that the underlying ineffective assistance of trial counsel claims were without merit. Mot. at PageID.3828–3829. In light of the Court's finding that it did not err in rejecting Petitioner's ineffective assistance of trial counsel claims, Petitioner is unable to show that the Court erred in rejecting the related ineffective assistance of appellate counsel claim.

### E. Sufficiency of Evidence Claim

Petitioner argues that this Court erred in rejecting his sufficiency of evidence claim concerning the amount of drugs taken in light Dr. Richmond's testimony calling into question the amounts of methadone and possibly other drugs taken. Mot. at PageID.3829.

The Court rejected Petitioner's sufficiency of evidence claim in part by stating the following:

> In the present case, Gindlesberger and Crampton testified that they calculated the amount of drugs stolen from the pharmacy by comparing what was left in the narcotics cabinet after the break-in with inventory records indicating what was there

8

> before it. This testimony, if believed, was sufficient to establish the elements of the offenses, including the amount of the controlled substances stolen

Kane, 2022 WL 4137811, at * 10.

In reviewing a sufficiency of evidence claim, a court must view the evidence in a light most favorable to the prosecution. Jackson v. Virginia, 443 U.S. 307, 319 (1979). An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. See Gall v. Parker, 231 F. 3d 265, 286 (6th Cir. 2000). When viewed in a light most favorable to the prosecution, the evidence was sufficient to establish Petitioner's guilt.

The Court denies Petitioner's motion to alter or amend the judgment because Petitioner merely presents issues that the Court already ruled on, either expressly or by reasonable implication, when the Court denied the petition for writ of habeas corpus and declined to issue a certificate of appealability. See Hence v. Smith, 49 F. Supp. 2d 547, 553 (E.D. Mich. 1999).

### F. Certificate of Appealability

Petitioner seeks a certificate of appealability. The proper procedure when a district court denies a certificate of appealability, as this Court already has, is for the petitioner to file a motion for a certificate of appealability before the appellate court in the appeal from the judgment denying the petition for writ of habeas corpus or the motion to vacate sentence. See Sims v. U.S., 244 F. 3d 509 (6th Cir. 2001) (citing Fed. R. App. P. 22(b)(1)). Because the Court has already denied Petitioner a certificate of appealability, Petitioner should direct his request for a certificate of appealability to the Sixth Circuit. The Court, in the interests of justice, will order that Petitioner's motion for a certificate of appealability be transferred to the Sixth Circuit.

### III. CONCLUSION

For the reasons set forth above, the Court denies Petitioner's motion to correct the factual findings, to alter or amend the judgment, for rehearing, and for a certificate of appealability (Dkt. 33). The Court orders the Clerk of the Court transfer Petitioner's "Motion for A Certificate of Appealability" (Dkt. 33) to the United States Court of Appeals for the Sixth Circuit pursuant to 28 U.S.C. § 1631.

SO ORDERED.

Dated: June 20, 2023　　　　　　　　　　　　s/Mark A. Goldsmith
　　　　Detroit, Michigan　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　United States District Judge